WARREN JOHNSON, APPELLANT

VS

BISSO TOW-BOAT CO., & AL

**7279**

NO. 7279

April 8th. 1918.

75

CHARLES F. CLAIBORNE, JUDGE.

Plaintiff claims of defendants William A. Bisso and the Bisso Tow Boat Company a commission of $1250.00 for procuring the sale of a barge.

Plaintiff averred in his petition that he was a mechanical engineer and that he had a client desirous of purchasing boats and ships; that he called upon William A. Bisso, the President of the Bisso Tow Boat Company and stated to him that he could sell fram for him, or for the company owning it, the barge or hull "B. W. Winchell", for a commission of five per cent; that thereupon the said Bisso acting for himself and for the Bisso Tow Boat Company, the owner of said barge as he believed signed the following letter:

March 26th. 1916.

Mr. Warren Johnson,

Dear Sir:-

Referring to hull about 300 ft.x40 ft.x12 ft. deep which we have on hand and on which we gave you a ten day option from March 22nd. at $23,750.00, beg to state, in accordance with our conversation to-day that if you are able through your efforts to make a xx sale of this hull at $25,000.00 we hereby agree to pay you a commission of 5%, amounting to $1250.00.

x x x x x x x x x x x x x x x x x x x x x x x x x x x x x x x x

Very truly yours,

"Signed" W. A. Bisso.

That in pursuance of said letter petitioner procured the sale of said hull or barge "B. L. Winchell" to the Gulf Refining Company through G. N. Bliss, for the stipulated price of $25,000.00 and thereby earned his commission of $1250.00, which the defendants refused to pay to him.

76

The defendant, William A. Bisso, denied any indebtedness to the plaintiff; he denied that in the above transactions he had acted individually or for the Bisso Towboat Company, or that said Company was the owner of the barge at that time; that he wrote the above letter acting for and on behalf of the New Orleans Coal Company, the owner of the barge at that time; that the barge was sold by the New Orleans Coal Company to the Bisso Towboat Company, and by said Company sold for $25,000.00 without agreement to pay to the plaintiff any sum whatever, plaintiff's only interest in the sale at the time being to secure from the purchaser a lucrative contract for work on said barge.

The Bisso Towboat Company denied any indebtedness to plaintiff; denied that Bisso had acted as the President or on behalf of the Company in his transactions with the plaintiff, and denied that it was the owner of the barge Winchell at that time; it averred that subsequent to the date of the above letter it acquired the ownership of the barge from the New Orleans Coal Company, in which deal the plaintiff was in no way concerned; that thereafter it sold the barge for $25,000.00, without any agreement to pay the plaintiff any commission; that plaintiff was very much interested in securing a remunerative contract from the purchaser in case of a sale, and did secure said contract after the sale.

Plaintiff's demand was dismissed as in case of non-suit and he has appealed.

There are no written reasons for judgment in the record. Three questions present themselves for solution:

1st. Was the barge Winchell sold for $25,000.00?

2nd. Was the plaintiff instrumental in procuring the purchaser?

3rd. Who is liable for the commission promised him, William H. Bisso or the Bisso Tow Boat Company?

1st. The answers of both defendants admit that the barge was sold by the Bisso Towboat Company for $25000.00 and the evidence shows that the company got the money.

2nd. Defendant William A. Bisso admits, and the evidence shows beyond a doubt that the barge was sold to the Gulf

77

Refining Company represented by G. N. Bliss. The evidence also establishes that the plaintiff was alone instrumental in procuring the purchaser. As early as February 25th. 1916 the plaintiff wrote to G. N. Bliss of Port Arthur, Texas, the Marine Manager of the Gulf Refining Co.;

"Dear Sir:-    I have located an old transfer steel hull 350 ft. x 40 ft. x 12 ft. with round knuckles and model ends with rudder at each end. Excepting for a few dents along the knuckles, she is in an excellent state of preservation and would make a splendid river barge. A 3-16 deck, longitudinal wooden blkd, deck hatches with ladders and a wooden fender along side could be installed at a cost of about $28,000.00 and she can be bought for about $27,000.00 capacity would be something over 21,000 lbs. on 10'3" draft. Are you interested?"

Receipt of this letter was acknowledged from the office of the Gulf Refining Company, with the information that Mr. Bliss was out of town, but that the letter would be placed before him upon his return.

Following this correspondence was the letter of Wm. A. Blåso of March 26th. reproduced above. Upon the same date the plaintiff again wrote:

"Mr. G. N. Bliss,

Port Arthur, Texas,

Dear Sir:-

Would you be interested in one or two 11000 bbl. seagoing oil barges which could be converted in about six months. The cost of these barges complete would be about $90,000.00 each and, if you would care to have me do so, I would gladly go into the matter carefully and accurately so as to submit exact figures."

Again on March 29th. plaintiff wrote to Mr. Bliss:

"Regarding the convertible barge about which which I wrote you wish to say that this hull is in New Orleans and can be seen at any time. My subsequent letter which crossed yours on its way here contemplated cutting this large barge into two lengths and adding a modeled bow at each end, making two barges. This barge is in excellent condition, and I believe

78

would make two splendid sea going barges, far better than the Choctaw. Am fairly well through a rough, but more or less accurate, estimate on the cost of conversion, and hope to have it completed within a couple of days. "

To this letter Bliss wired the following answer to plaintiff:

April 10th. 1916

Warren Johnson
C/O Johnson Iron Works

Can you so arrange matters that we can have absolute option on barge you propose to make two barges out of for ten days or until you can furnish us definite cost of converting both barges. Proposition you have outlined looks good to us. Answer."

In answer to this wire plaintiff wrote to Bliss on April 11th.

"Beg to acknowledge receipt of your wire asking that I obtain option on the Bisso barge. Have seen Bisso and he states that he has a party interested whom he expects to see this afternoon at 2 P. M. &c &c."

On April 22nd. plaintiff wired to Bliss:

"Better arrive Monday meet you nine o'clock St. Charles Hotel."

To which Bliss replied:

"Will arrive New Orleans Monday morning."

On Monday April 24th. Bliss arrived in New Orleans when the following document was signed:

"New Orleans April 24th. 1916.

Memorandum of agreement entered into this date between the Bisso Towboat Company of New Orleans and the Gulf Refining Company of Port Arthur, Texas.

First: In consideration of the sum of Two Hundred dollars, receipt of which is hereby acknowledged, the Bisso Towboat Company, give an option on the Barge "D. L. Winchell" for a period of fifteen days, to the Gulf Refining Company.

Second: Before or at the expiration of this option, if the Gulf Refining Company concludes to purchase this barge,

79

they agree to pay the Bisso Towboat Company the sum of Twenty-five thousand dollars cash. In the event the Gulf Refining Co., does not purchase this barge, they forfeit the option money, two hundreddollars, to the Bisso Towboat Company.

Third: If the Gulf Refining Company decide to purchase this barge, as above mentioned, the Bisso Towboat Company agree to put this barge in the dock at their expense for inspection."

"Signed" Bisso Towboat Company

W. A. Bisso, President

Gulf Refining Co.

Marine Dept.

G. N. Bliss, Agent

Witness:                                  J. R. Quaid

Warren Johnson

On the same day the Gulf Refining Co., gave their check for $200.00 to the Bisso Towboat Co.

In order to take advantage of this option the Gulf Refining Company brought from New York their chief Engineer Mr. James Kennedy.

The barge was docked and Mr. Kennedy, Mr. Bliss, and the plaintiff examined it.

The sale was consummated by the delivery of a draft of the Gulf Refining Co. to the order of the Bisso Towboat Co., for $24,800.00 dated May 9th. 1916.

The plaintiff testifies that no one else had anything to do with making this sale to the Gulf Refining Co., and his testimony is fully corroborated by G. N. Bliss.

There is no suggestion on the part of the defendants that any one else procured, or assisted in procuring the Gulf Refining Co., as a purchaser. The only defense is that the authorization to sell contained in the letter of March 26th. was to last only ten days, and that it had expired by limitation on April 24th. when the final agreement of sale was made. We do not construe the letter of March 26th. as limiting the time during which the plaintiff was authorized to procure a

purchaser and earn a commission.

The words of the letter upon which the defendants rely
are as follows: "Referring to hull about 300 ft. x 40 ft. x 12 ft.
deep which we have on hand and on which we gave you a ten day
option from March 22nd. beg to state &c." We believe with the
plaintiff that these words were merely entended to identify the
particular barge upon which they had a previous option and which
they were by that letter, authorized to sell on commission; but
that it did not mean, nor was it intended, to limit the time of
the authorization. Plaintiff testifies that, as a matter of
fact, on March 22nd. he had a ten days option to buy the barge
for $23,750.00. But an option to buy or a power to sell are two
distinct contracts.

But whether our interpretation of this letter is cor-
rect or not is immaterial. The fact remains that within the ten
days succeeding March 26th. and subsequent thereto and up to
May 9th. 1916 the plaintiff, with the knowledge and acquiescence
of Wm. A. Bisso, was actively engaged in procuring a purchaser;
that he procured the purchaser; that the purchaser was accepted,
and the price agreed upon, $25,000, was paid by him to the owner.
In the case of Barker vs Jung No. 6611 of this Court we said:
"Real estate agents selling property for the owenr with his
consent acquire a right to the customary commission when they
have procured a buyer, although the sale be not completed by
them, but is consummated by the owner within a short time with
the agent's buyer". Quoting 1A5-3A671-110 La 500 See also 4
Am & Eng Enc Law p 977 979 (b) 3 R 201.

Newman vs Longshoremen 11 Ct App 38

There is no doubt that adopting the limitation of
the life of the authorization contended for by the defendants,
if the plaintiff had procured a purchaser after the ten days,
they would not have been bound to have accepted a purchaser
procured by the plaintiff; but it is equally true that when
they accept the purchaser procured after the ten days, the ven-
dors must pay the commission. Having accepted the continuous
services, they must pay their value.

There is nothing to suggest that at any time Bisso put an end to the relations existing between him and plaintiff by virtue of the letter, or that plaintiff ceased to believe that he was exerting himself to earn this commission promised him by that letter. The argument that plaintiff was striving to effect a sale in his own interests only, so as to earn the benefits of what contracts he might make with the Gulf Refining Company might have had some force in the absence of the letter of March 26th. But it imposes no tax on our credulity to believe that plaintiff was actuated by two interested motives, the promise of the commission and the hope of future contracts with the purchaser. Indeed he testifies that he charged only $500.00 for the specifications for alterations to the barge, because of his expectations of $1250.00 commission.

We have therefore come to the conclusion that the plaintiff is entitled to his commission.

3rd. But who is to pay it, Wm. A. Bisso or the Bisso Towboat Company?

The defense is pitched upon two propositions first that Wm. A. Bisso is not liable because he was not the owner of the barge.Winchell, and that he was acting for the owner of the barge which was the New Orleans Coal Company on March 26th, and second, that the Bisso Towboat Company is not liable because on that date it was not the owner of the barge. Both propositions are devoid of force.

It was perfectly immaterial whether Bisso was owner of the barge or not. He had a right to employ some one to find a purchaser for the barge; and he was bound to pay the commission when the purchaser was found by the person employed by him. The letter is signed by him individually and there is no evidence that he informed the plaintiff that he was acting as agent or that plaintiff was aware of it otherwise. *18a 559* —

There is no doubt in our minds that William A. Bisso was originally individually liable, because he signed the letter or agreement in his individual capacity. In the case of Harvey vs Hoyle No. 6858 of this Court we said:

"When a party makes a contract with another the pre-

82

sumption is that he is acting for himself and he will be liable personally.

If he is not acting for himself, he must, in order to overcome this presumption, make it clear to the other party that he is acting in a representative capacity."

Quoting many authorities, to which we desire to add.

6 Ct. App. 400-48A 209-4 Pothier p 252 §88-Troplong Mandat § 519 p 492- 4 Fuzier Hermann p 677 § 12- 2 C. J. p 929 § 681 p 840-§ 522--4 La 62 #Story Agency § 266-446.

But when one discovers that the party with whom he has dealt has acted as agent he may seek out the principal and hold him liable. 7 N. S. 22-4La 50-234-14 La 491-3A401-5 A 15 2 C. J. p 840 § 522 p 841 note 71 (b) 71 (a) p 818 § 491 Smith Merc Law p 174.

It is not established with the clearness of which the subject was susceptible who was the owner of the barge Winchell on March 26th. 1916.

It was not Wm. A. Bisso.

It was either the New Orleans Coal Company or the Bisso Towboat Company. The fault of this uncertainty lies with the defendants. One of the reasons is that the offices of William A. Bisso, and of the New Orleans Coal Company, and of the Bisso Towboat Company, are all three in the same room, and that William A. Bisso is the President and Manager of both companies; and that the books of both companies are kept by the same Clerk, and the Minutes of neither Company make mention of these transactions. It would appear, however, by the testimony of Wm. A. Bisso, that the New Orleans Coal Company acquired the barge on July 5th. 1915 for $7625.00. This is not shown however by the books of either company, nor from any act of sale, nor does it appear from whom it was purchased.

A pencil memorandum upon a letter head of the New Orleans Coal Company dated 4-30-1916 (April 30th. 1916), six days after the promise of sale by the Bisso Towboat Company to the Gulf Refining Company is offered as evidence of the sale by the New Orleans Coal Company to the Bisso Towboat Company.

It reads as follows:

83

"Bisso Towboat Co.,                                         10130.72

Profit & Loss                                                127.00

Barge Winchell                                              9630.72

                                                             373.00

·Bark comet                                               10130.72

Stamped approved for payment

W. A. B.

President"

The entry upon the books of the Bisso Towboat Co.,
concerning this transaction appears to have been made as of
date May 26th. Wm. A. Bisso does not know what figure of this
pencil bill represents the price of sale whether it was $10130.00
or $9630.00, nor are the books of either company produced to make
that clear, nor any check or voucher, nor any Act of Sale.

Be that as it may, the fact appears that on April
24th. and May 9th. the Bisso Towboat Company acted as owner of
the barge and sold it to the Gulf Refining Company. Wm. A. Bisso
was President of the Bisso Towboat Company. His knowledge was
the knowledge of the Company. The Company therefore must be held
to have known that its President had engaged the services of the
plaintiff to sell the barge and had promised to pay him a com-
mission, for so doing.

They never repudiated the action of the President,
but on the contrary acted upon it, and reaped the advantages of
it, and thus satisfied it. If the testimony can be relied on, the
Bisso Company through the efforts of the plaintiff, got $25000.00
for what they paid, at most, $10,130.72. The Company cannot
profit by a contract made by its President and at the same time
repudiate its obligations. Having reaped its benefits it must
bear its burdens.

In the 3 Rob 201 the Supreme Court maintained a
charge to the Jury to the following effect: "Though by the death
of one of the defendants and the marriage of another, any special
power of attorney to Spragne, as a manager of the plantation,
would be revoked, yet if he continued to act as such, for the
benefit of all the co-proprietors, without any disavowal of his
authority, or if recognized, either tacitly or expressly, as such

by the defendants, that they would be bound by his acts."

In 2A 324 it was said:

"A principal who avails himself of a purchase made by an agent by selling the property, will be bound to comply with stipulations made by the agent with the owner at the time of the purchase."

However, by seeking to hold the Bisso Tow-Boat Co., liable to.him as an undisclosed principal, the plaintiff must release William A. Bisso. 2 C. J. p 841 $ 522, p 843 $ 526 24A 341 ̲ ℒℒ 234 ̶

It is therefore ordered that the judgment herein appealed from be reversed and set aside; and it is now ordered adjudged, and decreed that the Bisso Tow-Boat Company be condemned to pay to plaintiff herein Warren Johnson the sum of One Thousand two hundred and fifty Dollars with five per cent per annum interest from June 1st. 1916 till paid and all costs of suit.

It is further ordered that plaintiff's demand against William A. Bisso be rejected at his cost.

April 8th. 1918.